**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joe Kenard Jones, Jr., | CIV 13-8104-PHX-SLG (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE SHARON L. GLEASON, UNITED STATES DISTRICT JUDGE:

Petitioner Joe Kenard Jones, Jr., who is confined in the Arizona State Prison Complex, Cerbat Unit, Kingman, Arizona, has filed a *pro se* Amended Petition for Writ of Habeas Corpus (hereinafter "amended habeas petition") pursuant to 28 U.S.C. § 2254 (Doc. 5). Respondents filed an Answer on October 11, 2013 (Doc. 16). On October 30, 2013, Petitioner filed a Reply (Doc. 17).

**BACKGROUND**

On December 11, 2008, Petitioner was charged by indictment in the Superior Court of the State of Arizona with two counts of Sale of Narcotic Drugs, class 2 felonies (counts 1 and 3), and two counts of Use of Wire or Electronic Communication in Drug Related Transaction, class 4 felonies (counts 2 and 4.) (Doc. 16, Exh. A.) Petitioner proceeded to trial on July 28, 2009. (Id., Exh. J.) A synopsis of the trial evidence was set forth in the Memorandum Opinion of the Arizona Court of Appeals:

> On February 7, 2008, Appellant sold approximately 4.68 grams of cocaine, a useable amount, to a confidential informant working with the Northern Arizona Metro Narcotics Task Force. On February 13, 2008, Appellant, accompanied by two other individuals, sold approximately 2.62 grams of

> cocaine, a useable amount, to the same informant. The transactions were captured on videotape and audio recorded by four undercover officers who monitored the interaction between Appellant and the informant. Before each of the sales, the informant and his car were searched by police officers to ensure he had no money or contraband on his person or in his car. He was given funds to buy the drugs and outfitted with an audio body wire device, then followed by officers to the location for the drug transaction. After the transaction, the officers followed the informant to a secluded location, where he turned over the drugs he had purchased, and he and his car were searched again to ensure he had no other money or contraband.

(Doc. 16, Exh. V at 5-6.)

Petitioner was convicted on count one of the indictment (the February 7, 2008 sale), and acquitted on the remaining counts. (Doc. 16, Exh. O at 5.) At sentencing, the Court found that Petitioner had one prior historical felony conviction, and was on probation at the time he committed the offense, and imposed an enhanced, presumptive sentence of 9.25 years. (Id., Exh. Q, at 3-4.)

Petitioner filed a timely notice of appeal on September 3, 2009. (Doc. 16, Exh. R.) Petitioner raised one issue on appeal, that the trial court erred when it precluded him from impeaching the State's witness – the confidential informant – with that witness's prior felony convictions. (Id., Exh. S.) On June 24, 2010, the appellate court issued a memorandum decision affirming Petitioner's conviction and sentence, finding that the trial court did not err in precluding the informant's prior felony convictions. (Id., Exh. V.) It further found that even assuming error, Petitioner could not demonstrate prejudice because: (1) he thoroughly impeached the informant with the fact that the informant was arrested for the sale of methamphetamine in 2007 and entered cooperation agreements to target relatives and friends to avoid prison and probation; (2) he was ultimately acquitted of the three counts that relied most on the informant's credibility and convicted him solely of the count in which he was the only person with the informant during the transaction; and (3) the transaction for which he was convicted was videotaped, audio recorded, and monitored by undercover police officers, and the informant's vehicle was thoroughly searched both before and after the transaction. (Id., at 9.) Petitioner did not file a petition for review in the Arizona Supreme Court. (Id., Exh. W.)

Petitioner commenced a timely post-conviction proceeding by filing a Notice of Post-Conviction Relief. (Doc. 16, Exh. X.) In his subsequently filed Petition for Post Conviction Relief ("PCR"), Petitioner, through counsel, asserted that he received ineffective assistance of counsel at trial and on appeal under the Sixth and Fourteenth Amendments when: (1) trial counsel permitted her client to be tried by an 8-person jury when Arizona law required that he be tried by a 12-person jury; (2) trial counsel ineffectively cross-examined the State's informant by failing to elicit evidence regarding his actual prison exposure in his own case, which was highly probative of his motive to lie; (3) trial counsel failed to object to the court sentencing Petitioner to a prison term enhanced with a prior felony conviction and being on probation at the time of the offense, when the State never formally alleged either sentencing enhancement prior to trial; and (4) appellate counsel failed to raise on direct appeal the fact that Petitioner's sentence was improperly enhanced as fundamental error. (Id., Exh. Y, at 1-2.)

On February 18, 2011, the trial court summarily dismissed Petitioner's PCR, finding that Petitioner had "failed to raise a colorable claim which presents a material issue of fact or law which would entitle the [Petitioner] to relief pursuant to Arizona Rules of Criminal Procedure, Rule 32, and that no purpose would be served by any further proceedings." (Doc. 16, Exh. BB.) Petitioner, through counsel, then filed a petition for review of the trial court's summary dismissal in the Arizona Court of Appeals, which was denied summarily on February 27, 2013. (Id., Exhs. CC, FF.)

Petitioner filed the instant, timely, amended habeas petition on June 7, 2013, in which he raised the following claims of ineffective assistance of trial and appellate counsel:

(1) Trial counsel was ineffective in violation of Petitioner's Sixth Amendment right to the effective assistance of counsel by failing to inform Petitioner of a 4-to-7 year plea agreement offer by the State.

(2) Trial counsel was ineffective in violation of Petitioner's Sixth Amendment right to the effective assistance of counsel by allowing Petitioner to be tried by an 8-person, rather than a 12-person jury.

(3) Trial counsel was ineffective in violation of Petitioner's Sixth Amendment right to the effective assistance of counsel by failing to effectively cross-examine the confidential informant regarding the prison exposure in his own case if he did not cooperate in Petitioner's case.

(4) Trial counsel was ineffective in violation of Petitioner's Sixth Amendment right to the effective assistance of counsel by failing to object when the trial court sentenced Petitioner to an enhanced prison term even though the State never formally alleged any sentencing enhancements.

(5) Appellate counsel was ineffective in violation of Petitioner's Sixth Amendment right to the effective assistance of counsel by failing to argue on appeal that Petitioner's sentence was improperly enhanced.

(Doc. 5.)

On July 15, 2013, the Court ordered Respondent to answer the five claims raised by Petitioner, but permitted Respondents to file an answer limited to affirmative defenses. (Doc. 8.) In their Answer, Respondents argue that Petitioner's amended habeas petition should be dismissed, as Ground One of the petition is procedurally defaulted, and that Grounds Two through Five fail on their merits. (Doc. 16.)

## DISCUSSION

### A. Exhaustion and Procedural Default

Before a federal court may grant habeas corpus relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Coleman v. Thompson, 501 U.S. 722, 731 (1991). The federal court will not entertain a petition for writ of habeas corpus unless each and every issue has been exhausted. Pliler v. Ford, 542 U.S. 225, 230 (2004); Rose v. Lundy, 455 U.S. 509, 521-22 (1982). To properly exhaust state remedies, the prisoner must have afforded the state courts the opportunity to rule upon the merits of his federal constitutional claims by "fairly presenting" them to the state courts in a procedurally appropriate manner. Castille v. Peoples, 489 U.S. 346 (1989); Baldwin v. Reese, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). A petitioner must describe both the operative facts and the federal legal theory so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts

1  bearing on his constitutional claim. Id., at 33. In cases not carrying a life sentence or the
2  death penalty, claims are exhausted once the Arizona Court of Appeals has ruled on them.
3  Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999).

4  Where a prisoner fails to "fairly present" a claim to the state courts in a procedurally
5  appropriate manner, his claims are procedurally defaulted. Ylst v. Nunnemaker, 501 U.S.
6  797, 802-05 (1991); Coleman, 501 U.S. at 731-32. There are two types of procedural default.

7  First, a state court may have applied a procedural bar when the prisoner attempted to
8  raise the claim in state court. Nunnemaker, 501 U.S. at 802-05. For example, a habeas
9  petitioner may be barred from raising federal claims that he failed to preserve in state court
10 by making contemporaneous objections at trial or by raising the claim on direct appeal or
11 post-conviction review. Bonin v. Calderon, 59 F.3d 815, 841-42 (9th Cir. 1995)(stating that
12 failure to raise contemporaneous objection at trial to an alleged violation of federal rights
13 constitutes a procedural default of that issue); Thomas v. Lewis, 945 F.2d 1119, 1121 (9th Cir.
14 1991)(finding procedural default where the Arizona Court of Appeals held that petitioner had
15 waived his claims by failing to raise them on direct appeal or in his first petition for post-
16 conviction review.) If the state court found a procedural bar but also addressed the merits
17 of the underlying federal claim, the "alternative" ruling does not vitiate the independent state
18 procedural bar. Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Carriger v. Lewis, 971 F.2d
19 329, 333 (9th Cir. 1992) (*en banc* court held that a state court may alternatively deny relief
20 on the merits of a federal constitutional claim even after dismissing the claim on procedural
21 grounds).

22 A higher court's subsequent summary denial of review affirms the lower court's
23 application of a procedural bar. Nunnemaker, 501 U.S. at 803. In order to "constitute
24 adequate and independent grounds sufficient to support a finding of procedural default, a
25 state rule must be clear, consistently applied, and well-established at the time of the
26 petitioner's default." Wells v. Maass, 28 F.3d 1005, 1010 (9th Cir. 1994). Arizona courts
27 have consistently applied their procedural default rules. Stewart v. Smith, 536 U.S. 856, 860
28 (2002)(holding that Arizona Rule of Criminal Procedure 32.2(a) is an adequate and

independent procedural bar); Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998)(rejecting the argument that Arizona courts have not "strictly or regularly followed" Rule 32); Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992)(rejecting the assertion that Arizona courts' application of procedural default rules had been "unpredictable and irregular.").

In the second procedural default scenario, the state prisoner may not have presented the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state court would be "futile." Teague v. Lane, 489 U.S. 288, 297-99 (1989). Generally, any claim not previously presented to the Arizona courts is procedurally barred from federal review because any attempt to return to state court to properly exhaust a current habeas claim would be "futile." Ariz. R. Crim. P. 32.1, 32.2(a) & (b); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); Ariz. R. Crim. P. 32.4 (stating that in a Rule 32 of-right proceeding, notice of post-conviction relief must be filed within 90 days after entry of judgment and sentence or within 30 days appellate mandate); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time barred. Beaty, 303 F.3d at 987; Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." Dretke v. Haley, 541 U.S. 386, 393-94 (2004); . To establish cause, a petitioner must establish that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986)  The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. Id.  To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage,

infecting his entire trial with error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis omitted). Where petitioner fails to establish cause, the court need not reach the prejudice prong.

To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. Schlup v. Delo, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B).

Ground One: Trial counsel's alleged failure to inform Petitioner<br>of a 4-to-7 year plea agreement offer by the State.

Petitioner failed to present at any stage of the state proceedings Ground One of his amended habeas petition. Ground One is therefore unexhausted. Ground One is also procedurally defaulted because Petitioner can no longer return to state court to exhaust the claim because Petitioner would be time barred, as he failed to raise the issue in his first PCR, and has not demonstrated that his claim is among those that can be brought in a successive Arizona PCR proceeding. Ariz. R. Crim. P. 32.2(a); 32.1(d)-(h).

Petitioner asserts that he should be excused from procedural default because his PCR counsel was ineffective for not raising this claim, citing Martinez v. Ryan, 132 S.Ct. 1309; ___U.S.___(2012). (Doc. 5, at 13.) Previous to Martinez, the United States Supreme Court held that post-conviction counsel's ineffectiveness does not establish cause for the procedural default of a federal claim on habeas. Coleman, 501 U.S. at 752-57. The Martinez Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez, __ U.S. __; 132 S.Ct., at 1315. A prisoner may show cause for default of an ineffective assistance claim by demonstrating that counsel at the initial review collateral proceeding was ineffective under Strickland v. Washington, 466 U.S. 668 (1984), and also by demonstrating that this claim of ineffective assistance of trial counsel is a substantial one, that the claim has some merit. Id., at 1318.

- 7 -

1    The two-prong test for establishing ineffective assistance of counsel was established
2 by the Supreme Court in Strickland. To prevail on an ineffective assistance claim, a
3 convicted defendant must show (1) that counsel's representation fell below an objective
4 standard of reasonableness, and (2) that there is a reasonable probability that, but for
5 counsel's unprofessional errors, the result of the proceeding would have been different.
6 Strickland, 466 U.S. at 687-88. There is a strong presumption that counsel's conduct falls
7 within the wide range of reasonable assistance. Strickland, 466 U.S. at 689-90.

8    Regarding the performance prong, a reviewing court engages a strong presumption
9 that counsel rendered adequate assistance, and exercised reasonable professional judgment
10 in making decisions. See id. at 690. "A fair assessment of attorney performance requires
11 that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the
12 circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's
13 perspective at the time." Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting
14 Strickland, 466 U.S. at 689). Moreover, review of counsel's performance under Strickland
15 is "extremely limited": "[t]he test has nothing to do with what the best lawyers would have
16 done. Nor is the test even what most good lawyers would have done. We ask only whether
17 some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel
18 acted at trial." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other
19 grounds, 525 U.S. 141 (1998) (citation omitted). Thus, a court "must judge the
20 reasonableness of counsel's challenged conduct on the facts of the particular case, viewed
21 as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

22    If the prisoner is able to satisfy the performance prong, he must also establish
23 prejudice. Strickland, at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000)
24 (burden is on [petitioner] to show prejudice). To establish prejudice, a prisoner must
25 demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result
26 of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable
27 probability" is "a probability sufficient to undermine confidence in the outcome." Id. A
28 court need not determine whether counsel's performance was deficient before examining

- 8 -

1  whether prejudice resulted from the alleged deficiencies. See Robbins, 528 U.S. at 286 n.14.
2  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient
3  prejudice, which we expect will often be so, that course should be followed." Id. (quoting
4  Strickland, 466 U.S. at 697).

5  The court shall not grant a prisoner an evidentiary hearing "[u]nless the motion and
6  the files and records of the case conclusively show that the prisoner is entitled to no relief,
7  . . ." 28 U.S.C. §2255; see also, Watts v. United States, 841 F.2d 275, 277 (9th Cir. 1988).
8  A hearing is not required when credibility issues can be conclusively decided on the basis
9  of documentary testimony and evidence in the record. Id., at 277. A prisoner must "allege
10 specific facts which, if true, would entitle him to relief." United States v. McMullen, 98 F.3d
11 1155, 1159 (9th Cir. 1996). See also, Shah v. United States, 878 F.2d 1156, 1161 (9th Cir.
12 1989) (vague and conclusory assertions do not warrant the granting of an evidentiary
13 hearing).

14 The only support for Petitioner's argument that trial counsel was ineffective in not
15 communicating a favorable plea offer, is Petitioner's claim in the body of his habeas petition
16 that he was never notified of the offer, and that he communicated this to PCR counsel, but
17 that PCR counsel did not raise this claim. (Doc. 5, at 13.) He attaches a copy of a September
18 10, 2010, letter purportedly sent to him by PCR counsel in which he advises Petitioner that
19 his trial counsel's preparation "seems very competent in that she interviewed all state
20 witnesses, investigated the CI and sought and obtained a favorable plea offer (4-7) that you
21 rejected prior to trial." (Id., at 20). Petitioner claims that this letter was the first time he had
22 learned of the 4-7 plea offer.

23 Despite having purportedly first learned of the 4-7 plea offer in September, 2010,
24 Petitioner did not make any request of the court to file a *pro se* supplement to his PCR raising
25 the issue, or seek new counsel, after the filing of the PCR (November 1, 2010), after the
26 filing of the Reply (January 27, 2011), or before the trial court's ruling on February 18, 2011,
27 dismissing the PCR proceeding. Furthermore, the record reflects that the state prosecutor
28 extended a 10-year plea offer on January 6, 2009. (Doc. 16, Exh. B.) That plea offer was

- 9 -

1 discussed at a hearing before the trial court on February 5, 2009. (Id., Exh. D, at 7.) Notes
2 from state prosecutor's file indicate that Petitioner's trial counsel, after having been tendered
3 the 10-year plea offer, initiated a discussion with the prosecutor on May 21, 2009, regarding
4 a 4-7 year plea offer, stating that Petitioner "may" accept such an offer. (Id., Exh. F.) The
5 notes do not reflect that the plea offer was officially extended.

6 In an email communication between the prosecutor and trial counsel on May 29, 2009,
7 Petitioner's counsel indicated that Petitioner rejected an offer of 4-7 years in prison. (Doc.
8 16, Exh. H, at 1.) Furthermore, in an email exchange on July 16, 2009, between trial counsel,
9 the prosecutor and court personnel concerning a non-trial judge's willingness to conduct a
10 settlement conference in the case, Petitioner's counsel indicated that Petitioner had said "no"
11 to any plea offers, and declined a settlement conference. (Id., at 2.) On the first day of trial,
12 Petitioner requested redetermination of counsel, informing the court that, "it seems like all
13 she wants me to do is sign a plea. And I'm not going to sign a plea because I'm not guilty."
14 (Id., Exh. J, at 9.) Petitioner complained that his counsel kept asking that he participate in
15 a settlement conference although he kept refusing, and that he kept telling her that he was not
16 going to sign a plea because he was not guilty. (Id., at 11-12.)

17 Based upon this record, the Court finds that PCR counsel was not ineffective by not
18 raising this claim. Petitioner's claim that PCR counsel was ineffective, when juxtaposed
19 against the record in this case, is not a substantial one. Assuming PCR counsel was aware
20 of Petitioner's claim, his decision not to raise it does not fall below an objective standard of
21 reasonableness. "[As] counsel is not necessarily ineffective for failing to raise even a
22 nonfrivolous claim," PCR counsel is not "ineffective for failure to raise a claim that is
23 meritless." See, Sexton v. Cozner, 679 F.3d 1150, 1157 (9th Cir. 2012) A petitioner "must
24 show that PCR counsel's failure to raise an ineffective assistance of trial counsel was an error
25 'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the
26 Sixth Amendment,' and caused [] prejudice." Id. (citations omitted).

27 \\\
28 \\\

Even if Petitioner could establish that the 4-7 offer was made and his trial counsel did not tender it to him constitutes ineffective assistance of counsel, and that this is a substantial claim, Petitioner can show no prejudice resulting from PCR counsel's failure to raise the claim. The record is clear that, even had the plea offer been tendered to Petitioner, by his own words, he would not have taken it. Petitioner has not demonstrated a reasonable probability that the result of the proceeding would have been different absent trial counsel's purported error. Petitioner has not demonstrated cause, pursuant to Martinez, to excuse his procedural default, or prejudice. Furthermore, Petitioner has not established that a fundamental miscarriage of justice occurred. The Court will recommend that ground one of Petitioner's habeas petition be denied and dismissed with prejudice.

**B. Merits Analysis**

**1. AEDPA Standard of Review**

Under the AEDPA[1], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ...." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Taylor, 529 U.S. at 405-06. "A state court's decision can involve an

---

[1] Antiterrorism and Effective Death Penalty Act of 1996.

'unreasonable application' of Federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002). See Atwood v. Ryan, 2014 WL 289987 (D. Ariz. Jan. 27, 2014)

Ground Two: Trial Counsel's alleged failure<br>to secure trial before a 12-person jury.

Petitioner claims that trial counsel was ineffective for failing to secure Petitioner's trial before a 12-person jury because, if convicted of all crimes charged, he faced a sentence of over 30 years in prison. See A.R.S. §13-703(A), (H) (a person convicted of two class 2 felonies and two class 4 felonies faces a maximum term of 32.5 years if sentenced to consecutive, aggravated terms). During a pretrial conference, the trial judge noted his intent to impanel an 8-person jury, and both parties agreed. (Doc. 16, Exh. I, at 3.)

The Arizona Constitution provides that "[j]uries in criminal cases in which a sentence of death or imprisonment for thirty years or more is authorized by law shall consist of twelve persons." Ariz. Const. Art. 2 §23. The Arizona Supreme Court has held, however, that failure to empanel a 12-person jury does not violate the Arizona Constitution. State v. Soliz, 223 Ariz. 116, 219 P.3d 1045 (2009). The defendant in that case had faced a maximum sentence of 35 years if convicted at trial, but was tried by an 8-person jury, and ultimately received a 10-year sentence. The court held that no error occurred because trial in front of an 8-person jury removes any risk of being sentenced to more than 30 years as the State effectively waives its ability to obtain such a sentence. Id., 223 Ariz. at 119-120, 219 P.3d at 1048-49. Accordingly, there was no error here as well, because trial counsel's failure to object to an 8-person jury effectively benefitted Petitioner by removing the possibility of receiving a sentence in excess of 30 years. A conscious decision not to object under this circumstance may even be considered trial strategy. See Strickland, 466 U.S. at 689 (finding trial counsel must be afforded "wide latitude" when making "tactical decisions" regarding

1  trial strategy). Even if, by failing to object, Petitioner's trial counsel was ineffective,
2  Petitioner suffered no prejudice, as he received a presumptive, 9.25-year prison sentence.

3    The United States Supreme Court also has held that the Sixth Amendment does not
4  require a 12-person, as opposed to a 6-person jury, leaving these considerations to Congress
5  and the States. Williams v. Florida, 399 U.S. 78, 102-103 (1970). Thus, the state court
6  finding that Petitioner claim was not "colorable" under Strickland was not contrary to, or an
7  unreasonable application of, clearly established federal law as determined by the United
8  States Supreme Court, or based on an unreasonable determination of the facts in light of the
9  evidence presented in the state court proceeding.

10    Ground Three: Trial counsel's alleged failure to effectively
cross-examine the confidential informant regarding the prison
11  exposure in his own case if he did not testify against Petitioner.

12    Petitioner claims that trial counsel was ineffective by not eliciting from the informant
13  the fact that he faced up to 35 years in prison if convicted on the charges he was facing.
14  (Doc. 5, at 16.) The informant was cross-examined by Petitioner's trial counsel concerning
15  his prison exposure if he did not cooperate with the prosecution:

16  Q. You were going to prison if you didn't enter into a deal. Right?
17  A. Yeah.
18  Q. And so you had two choices?
19  A. Yeah.
20  Q. You could go to prison or you could work for the state?
21  A. Yes.
22  Q. And you chose to save yourself?
23  A. Yes.
24  (Doc. 16, Exh. M, at 243.)

25    Petitioner's trial counsel also elicited from the informant that he was facing prison for
26  a 2007 arrest for sale of methamphetamine, that he effectively avoided prison by agreeing
27  to cooperate with the State, and drew attention to the details of the written agreement the
28  informant had entered into with the State. (Doc. 16 at 7-9, 19.) Trial counsel effectively

impeached the informant by establishing his motive to be untruthful and implicate Petitioner. Even if the failure to elicit from the informant the fact that he faced a lengthy prison sentence if convicted constitutes ineffective assistance of counsel, Petitioner can not demonstrate prejudice. The Arizona Court of Appeals, in affirming Petitioner's conviction on appeal, concluded that, even assuming the trial court erred in disallowing impeachment of the informant with his four prior felony convictions, three for disorderly conduct with a weapon and one for a narcotic drugs violation, Petitioner had not demonstrated prejudice:

> At trial, Appellant was able to thoroughly impeach the informant with the fact that the informant had been arrested for the sale of methamphetamine in 2007 and entered agreements to target relatives and friends to avoid prison and probation. The jury acquitted Appellant of three of the four counts alleged - the counts that relied most on the informant's credibility - and convicted him solely of the count in which he was the only person with the informant during the transaction. Further, the transaction was videotaped, audio recorded, and monitored by four police officers, and the informant's vehicle was thoroughly searched both before and after the transaction. Appellant has not demonstrated that prejudice occurred.

(Doc. 16, Exh. V, at 9.)

Similarly, even if Petitioner's counsel was ineffective by not eliciting from the informant that he faced up to 35 years in prison if convicted as charged, Petitioner has not demonstrated prejudice. Thus, the trial court's finding that Petitioner had raised no colorable claim under <u>Strickland</u> was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Ground Four: Trial counsel's alleged failure to object to<br>Petitioner's illegally enhanced sentence.

The indictment against Petitioner cited various statutory provisions, to include A.R.S. §13-604 and §13-604.02[2]. (Doc. 16, Exh. A.) These two provisions provided notice, respectively, to Petitioner that he could be sentenced as a category two repetitive offender if he had a historical prior felony conviction, and that if convicted of a dangerous felony

---

[2]These statutory sections were renumbered in 2008 to sections §13-703 and §13-708, respectively. <u>See</u> 2008 Ariz. Sess. Laws, ch. 301, §§1-120.

- 14 -

1 offense while on probation for a felony offense, his sentence would be no less than the
2 presumptive sentence, and would be a "flat-time" sentence. The State later moved to amend
3 the indictment, pursuant to A.R.S. §13-701(D) to allege the following aggravating factors:
4 (1) Petitioner committed the offense as consideration for the receipt of pecuniary gain; (2)
5 Petitioner was convicted of a crime within 10 years of the instant offense; and (3) Petitioner
6 was on probation in that case during the commission of the instant offense. (Id., Exh. G.)
7 After the trial jury returned its verdict against Petitioner, the State indicated to the court that
8 it would be "withdrawing the [] aggravating factors of prior felony conviction and probation,
9 as they are not going to be requested to be found as aggravating factors but used as
10 mandatory sentencing enhancements under - - - well, former section §13-604 and §604.02."
11 (Id., Exh. N, at 201.) As to any other aggravating factor, Petitioner agreed to waive his right
12 to have a jury make those finding, and allow the court to make that determination. (Id., Exh.
13 N, at 208-210.) At sentencing, the State reiterated its intent with respect to aggravating
14 factors:

> Your Honor, the state's position, what the state has said previously, is that the state is withdrawing them as, quote, aggravating factors, as they are not technically aggravating factors, they are sentence enhancements under the statute cited. And the state's memorandum, specifically, under section §13-604(B), which has now been renumbered to §13-703(B), the fact that the defendant has been convicted of a class two felony and has a prior conviction moves him into that sentencing range. It's not an aggravating factor. And, specifically, under §13-604.02(A) renumbered to §13-708(C), the fact that he was on probation again is a sentence enhancement and not an aggravating factor.

(Id., Exh. P, at 24-25.)

21 The State then called two witnesses to establish Petitioner's prior conviction and the
22 fact that he was on probation at the time of the offense, after which the court found beyond
23 a reasonable doubt that the State had proven the sentencing enhancements. (Doc. 16, Exh.
24 P, at 58.) The court then balanced the aggravating and mitigating factors, finding that they
25 balanced each other out, and sentenced Petitioner to the presumptive term under the
26 enhanced sentencing range. (Id., Exhs. P, at 61; Q.)
27 Petitioner contends that the State failed to provide him proper notice of the sentencing
28 enhancements prior to trial, as required by "former A.R.S. §13-604(P); current A.R.S. §13-

- 15 -

703(N))," and his trial counsel was ineffective in failing to object to the enhancement of his sentence. (Doc. 5, at 17.) The statutory penalty enhancement provision for prior convictions provides that "[t]he penalties prescribed by this section shall be substituted for the penalties otherwise authorized by law if an allegation of prior conviction is charged in the indictment or information and admitted or found by the court." A.R.S. §13-703(N). The penalty enhancement for an offense committed while on probation statutory provision includes similar language. A.R.S. §13-708(D).

Without question, the indictment against Petitioner referenced the sentencing-enhancement statutory provisions. It is also without question that Petitioner was aware that he faced 32.5 years in prison if he was convicted at trial of all charges. (Doc. 17, at 9.) Months before trial, Petitioner was also presented a plea agreement that would have allowed him to plead to one of the charges as a class 2 felony with one historical felony conviction, pursuant to A.R.S. §13-604, but that the State would dismiss the allegation that Petitioner "was on probation at the time of the offense for purposes of mandatory enhanced sentencing." (Doc. 16, Exh. B, at 3.) Furthermore, although the State filed a motion to amend the indictment to add the allegation of aggravating factors, pursuant to Ariz.R.Crim.P 13.5(a)[3], the amendment only sought to "add" the allegation, not remove any statutory references already in the indictment. (Id., Exh. G.)

It is clearly established federal constitutional law that a criminal defendant must have "reasonable notice of a charge against him. . . ." In re Oliver, 333 U.S. 257, 273 (1948). In determining whether a petitioner received fair notice of the charges against him, the court "begin[s] by analyzing the content of the [charging document]." Gautt v. Lewis, 489 F.3d 993, 1002 (9th Cir. 2007) (finding notice not sufficient when defendant sentenced under enhancement statutory subdivision not alleged in the indictment). "As a policy matter the defendant should know the full extent of the potential punishment that he faces before trial." State v. Waggoner, 144 Ariz. 237, 239, 697 P.2d 320, 322 (1985) (citation omitted). A

---

[3]"The prosecutor may amend an indictment, ... to *add* an allegation of one or more prior convictions, or other non-capital sentencing allegations" (emphasis added).

- 16 -

defendant's due process right to notice of the state's intent to seek enhanced punishment is satisfied by "reference in the indictment to the number of the statute providing for enhanced punishment . . ." Id. Thus, when the charging document refers to the applicable sentencing statute, it is sufficient to put the defendant on notice that the prosecution intends to seek an enhanced sentence. Id. See also State v. Hellenback, 212 Ariz. 12, 16, 126 P.2d 159, 163 (App. 2005). Petitioner was clearly put on notice that the State was seeking the sentencing enhancements through the indictment, as well as the tendered plea agreement, and had actual notice that he faced a maximum sentence of 32.5 years in prison due to the applicability of the enhancements. Therefore, the failure of his counsel to object does not amount to deficient performance. Thus, the trial court's finding that Petitioner had raised no colorable claim under Strickland was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Ground Five: Appellate counsel's alleged failure to<br>raise on appeal Petitioner's illegally enhanced sentence.

Claims of ineffective assistance of appellate counsel are reviewed according to the two-pronged Strickland standard. Cockett v. Ray, 333 F.3d 938, 944 (9th Cir. 2003). A petitioner must establish that counsel "unreasonably failed to discover nonfrivolous issues and to file a merits brief addressing them." Smith v. Robbins, 528 U.S. 259, 285 (2000). Then, if the petitioner succeeds in that showing, he has the burden of demonstrating prejudice. Id. "A failure to raise untenable issues on appeal does not fall below the Strickland standard." Turner v. Calderon, 281 F.3d 851, 872 (9th Cir. 2002). As set forth in this Court's analysis of Petitioner's Claim Four, Petitioner's sentence was not improperly enhanced, and thus, appellate counsel was not ineffective for not having raised the issue on appeal. The trial court's finding that Petitioner's claim was not "colorable" under Strickland was not contrary to, or an unreasonable application of, clearly established federal law as

determined by the United States Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## CONCLUSION

Ground One of Petitioner's habeas petition is procedurally defaulted and Petitioner has not demonstrated cause and prejudice to excuse his procedural default. Grounds Two through Five of Petitioner's habeas petition fail on their merits. Wherefore, this Court will recommend that Petitioner's Amended Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right and because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right

to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  See Rule 72, Federal Rules of Civil Procedure.

DATED this 9th day of April, 2014.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge